**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-0798-WJM-SKC

JESSICA BARRY,

      Plaintiff,

v.

GEICO CASUALTY COMPANY,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendant Geico Casualty Company's Motion for Partial Summary Judgment or, Alternatively, Motion to Bifurcate and Stay Discovery ("Motion"). (ECF No. 19.) Plaintiff Jessica Barry filed a response to the Motion ("Response") (ECF No. 25), to which Defendant filed a reply ("Reply") (ECF No. 26). For the following reasons, that portion of the Motion seeking partial summary judgment is granted as set forth herein.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if

the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[1]

This action arises out of an April 7, 2017 motor vehicle collision involving Plaintiff and another motorist (the "Tortfeasor"). (ECF No. 19 ¶ 1.) The Tortfeasor was insured for liability coverage up to $25,000. (*Id.* ¶ 2.) Plaintiff settled her claim with the Tortfeasor's insurance company for $19,500. (*Id.* ¶ 4.) On September 23, 2019, Plaintiff made a claim under her insurance policy with Defendant for underinsured motorist ("UIM") benefits, seeking $1.4 million in damages as a result of the collision. (*Id.* ¶ 5.) Plaintiff was insured by Defendant for UIM benefits up to $100,000. (*Id.* ¶ 3.)

On October 10, 2019, Defendant requested medical records from Plaintiff to help with its evaluation of her claim. (*Id.* ¶ 6.) Plaintiff provided the requested records on October 25, 2019. (*Id.* ¶ 7.) On November 20, 2019, Defendant requested additional documents and requested that Plaintiff submit to an independent medical evaluation

---

[1] The following factual summary is based on the parties' Motions and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. The Court does not cite the briefs for undisputed facts.

("IME").  (*Id.*)

On December 2, 2019, Plaintiff confirmed that her medical expenses as a result of the accident totaled $9,778.  (*Id.* ¶ 8.)  On June 5, 2020, Dr. John Papilion conducted an IME of Plaintiff.  (*Id.* ¶ 12.)  Dr. Papilion opined that Plaintiff sustained: "a coccyx fracture which resolved; a minor gluteus medius strain with some minor residuals; and a small posterior superior labral tear that did not require surgical intervention."  (*Id.*)  Dr. Papilion found that Plaintiff's condition was "stable and static and at maximum improvement."  (*Id.*)

On June 29, 2020, Defendant provided Plaintiff with the IME report and offered Plaintiff $10,778 to settle her claim.  (*Id.* ¶ 13.)  Plaintiff rejected Defendant's offer and stated that she believed her damages exceeded $100,000.  (*Id.* ¶ 14.)  On July 28, 2020, Defendant renewed its offer to settle Plaintiff's claim for $10,778, and explained that the offer consisted of "medical expenses in the amount of $9,778 and general damages (or non-economic damages) in the amount of $26,000, less the $25,000 liability coverage under the Tortfeasor's insurance policy."  (*Id.* ¶ 16.)   It is undisputed that Defendant is entitled to subtract $25,000 from Plaintiff's total damages even though Plaintiff settled for less than the Tortfeasor's policy limit.  (*Id.* ¶ 16 n.2.)

On October 21, 2020, Plaintiff claimed her injuries were ongoing and requested that Defendant reevaluate her claim.  (*Id.* ¶ 19.)   On December 2, 2020, Dr. Papilion issued a supplemental opinion in which he concluded that Plaintiff did not sustain permanent injuries because of the accident.  (*Id.* ¶ 20.)

On February 16, 2021, Plaintiff filed suit against Defendant, bringing three claims: (1) breach of insurance contract; (2) common law bad faith breach of insurance

contract; and (3) statutory bad faith breach of insurance contract under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116.  (ECF No. 7 at 14–15.)

### III. ANALYSIS

Defendant seeks summary judgment as to Plaintiff's second and third claims of common law and statutory bad faith breach of insurance contract (jointly, "Bad Faith Claims").  (ECF No. 19 at 6–12.)  In the alternative, Defendant requests that the Court bifurcate proceedings on the Bad Faith Claims.  (*Id.* at 12.)  Because the Court grants Defendant's Motion insofar as it requests partial summary judgment, it is not necessary to address Defendant's arguments regarding bifurcation.

### A.    Legal Standards

To prevail on a claim for common law bad faith in this context, a plaintiff must prove that: "(1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) Reasonableness is typically a question of fact, though it may be resolved as a matter of law where no issues of material fact exist.  *See Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015).  "Under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'"  *Id.* (quoting *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011)).  Bad faith claims are "evaluated objectively, based on industry standards."  *Id.*

Colorado Revised Statutes § 10-3-1115 prohibits an insurance company from unreasonably denying or delaying payment of a partially disputed insurance claim.[2]

_____

[2] Colorado Revised Statutes § 10-3-1116 provides for penalties and fees for violation of

Further, an insurer must "make partial payments on undisputed portions of UIM claims when other portions of the claim remain disputed." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 991 (Colo. App. 2015). Moreover, "[a]n insured should not be allowed to automatically accuse an insurer of bad faith in every situation in which the insurer disagrees with the insured about the value of a claim." *Canady v. Nationwide Affinity Ins. Co. of Am.*, 2020 WL 376494, at *4 (D. Colo. Jan. 23, 2020) (granting judgment on the pleadings to defendant insurance company on § 10-3-1115 claim where plaintiff had not established or alleged unreasonable delay).

**B.    Analysis**

In its Motion, Defendant argues that Plaintiff's Bad Faith Claims rest on a theory that a settlement offer is an admission that some portion of the claim for benefits is undisputed. (ECF No. 19 at 6.) If that were the case, Defendant's refusal to immediately pay Plaintiff the value of the unaccepted settlement offer would be evidence of bad faith. (*Id.*) Defendant argues, persuasively, that Colorado law does not recognize bad faith claims based on this theory. (*Id.* at 6–12.) In *Fisher v. State Farm Mutual Automobile Insurance Company*, 2015 COA 57, *aff'd,* 2018 CO 39, the Colorado Court of Appeals stated that:

> an assertion that [the insurer] breached its duty under
> section 10–3–1115 by failing to pay [the insured] the initial
> settlement offer is inconsistent with Colorado law . . .
> Colorado law thus prohibits the conclusion that [the insurer's]
> initial settlement offer represents an admission that the
> amount of the offer was the amount of benefits owed[.]

2015 COA 57, ¶ 15.

---

§ 10-3-1115.

In her Response, Plaintiff does not attempt to respond directly to Defendant's argument that it did not act in bad faith by refusing to pay her the amount of its unaccepted settlement offer.  (*See generally* ECF No. 25.)  Instead, she argues that her Bad Faith Claims are supported by "several allegations regarding [Defendant's] conduct (its decision to withhold payment only one among them), and it is the totality of those facts that establishes her bad faith claims."  (*Id.* at 6.)  Plaintiff offers three examples of Defendant's conduct that she argues present genuine issues of material fact in relation to her Bad Faith Claims.  (*Id.* at 6–7.)

First, Plaintiff argues that Defendant "requested information from [Plaintiff] in a piecemeal fashion, thus adding delay to the claim."  (*Id.* at 6.)  Defendant requested information on October 10, 2019 and requested additional information less than six weeks later, on November 20, 2019.  (*Id.* at 7.)  Plaintiff argues that Defendant could have "shaved months off the timeline of the claim" if Defendant had requested the additional information all at once.  (*Id.*)

The Court is not persuaded by this argument.  Plaintiff filed her claim for benefits on September 23, 2019, more than two years after the accident and nine months after her last medical record related to the accident.  (ECF No. 19 ¶¶ 1, 5, 8.)  In this context, the Court concludes that no reasonable juror could find that Defendant's requests for medical information, separated by less than 6 weeks, could support Plaintiff's Bad Faith Claims.

Second, Plaintiff argues that the UIM insurance policy only allows Defendant to request an IME if it does so reasonably.  (ECF No. 25 at 9.)  She argues that Defendant's request for Plaintiff to be examined by an IME was not reasonable here

because "[defendant] never pointed to an opinion of [Plaintiff's] doctors that it disagreed with nor stated why it questioned [Plaintiff's] medical records in the first place." (*Id.*) In its Reply, Defendant argues that Plaintiff's claims were based on assertions that she sustained permanent injuries in the accident that could require future surgery but her medical records did not disclose permanent limitations of any kind. (ECF No. 26 at 3.) Therefore, Defendant argues, the request to have Plaintiff examined was permitted by the terms of the policy. (*Id.*)

The Court agrees with Defendant's argument. Additionally, we note that Plaintiff claimed damages of $1.4 million but her medical records showed that medical expenses as a result of the accident totaled only $9,778. (*Id.* ¶¶ 5, 8.) The Court concludes that no reasonable juror could find that Defendant was acting in bad faith by requesting an independent medical examination in these circumstances.

Third, Plaintiff argues that Defendant's reliance on the opinion of the IME report was unreasonable. (ECF No. 25 at 7.) However, Plaintiff does not explain why Defendant's reliance on an IME report, which is a regular practice in insurance disputes, could be evidence of bad faith in this context. Without any factual support, the Plaintiff's argument is purely conclusory, and the Court finds that no reasonable juror could find in her favor on this basis. *See McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987) (stating that conclusory allegations are not sufficient to defeat a motion for summary judgment).

Finally, Plaintiff argues that taking her three arguments together, a juror could find that "the totality of [Defendant's] conduct" proved that Defendant was acting in bad faith. (*Id.*) The Court disagrees. Since none of Plaintiff's arguments have any merit,

taking them together does not alter the Court's conclusion that they still do not have any merit.

After a thorough and careful review of the record and the parties' arguments, the Court concludes that Plaintiff's arguments are unavailing because they do not establish that there is a genuine dispute of material fact that, if resolved in Plaintiff's favor, would allow a jury to find in her favor on either of her Bad Faith Claims against Defendant. As such, the Court grants summary judgment on those Bad Faith Claims.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.      Defendant's Motion for Partial Summary Judgment (ECF No. 19) is GRANTED as set forth herein; and

2.      At such time as the Clerk enters final judgment on all claims in this action, the Clerk shall enter judgment in favor of Defendant and against Plaintiff on Claims Two and Three in conformity with this Order.

Dated this 20th day of January, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge